UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAROLYN A. SMITH,
    PLAINTIFF

VS.

MICHAEL ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,
    DEFENDANT

CASE NO 1:07CV00199
(BARRETT, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Social Security Income and Disability Income Benefits in January, 2004. Her application was denied both initially and upon reconsideration. She then requested and obtained a hearing before an Administrative Law Judge (ALJ) in November, 2005 at Cincinnati, Ohio. Plaintiff, who was represented by counsel at the hearing, testified as did Janet Chapman, a Vocational Expert (VE). The ALJ reached an unfavorable decision in March, 2006, following which an appeal was processed to the Appeals Council. In January, 2007, the Appeals Council denied review and Plaintiff then timely filed her Complaint seeking judicial review of the final order of the Defendant Commissioner.

## STATEMENTS OF ERROR

Plaintiff alleges in her sole Statement of Error that the Appeals Council erred by failing to remand the case or by reversing the denial of benefits based on new evidence submitted to the Appeals Council. Plaintiff states that her late filing of evidence was justified by good cause and that it presents a reasonable probability that had the new evidence been before the ALJ at the time he made his decision denying benefits, the decision would have been different.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she lives alone in an apartment in Cincinnati, Ohio. She has no income and receives financial support from her three daughters. She testified that she completed the eleventh grade, but never obtained a GED. She is right-handed, is 5'7" tall and weighs 339 lbs. She last worked in February, 2003 as a self-employed child care provider, but had to stop because of back and neck pain and right hand carpel tunnel syndrome. Prior employment was as a filing clerk with CBS Temporary Service and a bakery employee who operated a machine and packed product.

When asked why she could not currently work on a full-time basis, Plaintiff complained of severe pain in her lower back and neck with radiating pain down both arms, but more frequently down the right arm. She mentioned a herniated disc and having been injured in a fall in 1998 as well as arthritis in her feet and knees, and specifically the left knee. She is also a diabetic and suffers from migraine headaches about three times per week.

Plaintiff testified that she takes muscle relaxers and Vicodin and extra-strength Tylenol for pain. She also goes to Drake Hospital for aquatic physical therapy on a twice-per-week basis. Plaintiff stated that she sees Dr. Clare for her back pain. She has no medical insurance and uses a cane. She used to see Dr. Khosla, a psychiatrist, at the Norcen Behavioral Health Clinic, but does not see her currently. She obtains prescriptions for Prozac and Seroquel from her primary care physician.

She cannot run a vacuum cleaner because of arm pain and cannot do laundry, but she can load the dishwasher, write and sometimes cook. She is able to dress herself, but cannot tie her shoes. She is able to shop for groceries with her grandson on a weekly basis. Plaintiff estimated that she could lift from 5 to 10 lbs., sit for 30-40 minutes, stand for 5 minutes without alternating positions. She rated her level of pain from 4 to 9 and testified that the pain generally worsens from morning to evening as activity increases. (Tr. 367-395).

2

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The first hypothetical question presented to the VE asked her to assume the ability to lift 50 lbs. occasionally and 25 lbs. frequently, can occasionally climb ladders, ropes and scaffolds and can occasionally crouch and crawl, cannot lift overhead with her left arm more than 2/3 of an 8-hour day, avoid concentrated exposure to hazards, machinery, unprotected heights. The VE responded that Plaintiff could perform her past work as an office worker and child care custodian as well as a light packer and medium machine operator.

The second hypothetical asked the VE to assume all the restrictions of the first and to add the ability to complete routine two to three-step tasks in an environment which is not high stress, no rapid constant pace, plus the restrictions listed on Exhibit 5F, the psychiatric evaluation done by Roy Shapiro, Ph. D. The VE responded that Plaintiff could return to her past relevant work as a file clerk.

The third hypothetical asked the VE to assume all the restrictions of the first two hypotheticals and to add that Plaintiff could use her right hand and arm for frequent handling and fingering. The VE indicated that Plaintiff could still return to the job as a file clerk.

The fourth hypothetical asked the VE to assume the accuracy of Plaintiff's testimony. The VE responded with her opinion that Plaintiff would be unable to function in the workplace.

Upon cross-examination, the VE admitted that if it were necessary that Plaintiff use a cane, or miss more than 2 days per month due to her symptoms or treatment, she would be unable to perform any of the jobs listed by the VE.

## THE OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff suffered from morbid obesity, low back pain, non-insulin dependent Diabetes Mellitus, knee pain and depression. The ALJ also found all of these impairments to be severe. The ALJ found Plaintiff's carpal tunnel syndrome to be other than severe. The ALJ accepted the residual functional capacity assessment contained in the second hypothetical and ultimately determined that Plaintiff could return to her job as a file clerk.

3

**MEDICAL RECORD**

Plaintiff was treated at Valley Mental Health Services for major depression. In August, 1994, Catherine Staskavich, Ph.D., a psychology resident and Randy Preshaw, Ph.D., her supervisor, reported that Lee Shonfield, M.D. initiated pharmacological therapy with Zoloft. and thereafter her depression went into remission. After a two-month period during which Zoloft was not taken, Plaintiff's depression again surfaced and after retaking Zoloft, the depression went into remission. (Tr. 139). Her problems included somatic symptoms, anger control, difficulty sleeping, fatigue, diminished ability to concentrate, weight gain, dealing with a daughter who was a teen-aged mother and involved with drugs and dealing with a philandering boyfriend. A GAF of 50 was assigned. (Tr. 140-146).

A physical residual functional capacity assessment was done by Gary DeMuth, M.D. and Diane C. Manos, M.D. May, 2004. Drs. DeMuth and Manos determined that Plaintiff could lift 50 lbs. occasionally and 25 lbs. frequently, sit for 6 hours in a workday and stand/walk for 6 hours in a workday. The two physicians found that Plaintiff could frequently climb ramps and stairs, but occasionally climb ladders, ropes and scaffolds. She could frequently balance, stoop and crouch, but could occasionally kneel and crawl. She had a limited ability to reach overhead with her left arm, but could frequently perform that maneuver. (Tr. 150-156).

Plaintiff was examined by Jennifer Wischer Bailey, M.D. in April, 2004. Dr. Bailey found that Plaintiff suffered from "morbid obesity, chronic neck and shoulder pain and chronic left knee pain." Dr. Bailey thought that Plaintiff might have a herniated disc in her cervical spine. Plaintiff's major complaint was neck and shoulder pain. She had muscle spasms of the cervical spine and "slightly diminished range of motion on the left side. "She had some numbness over the dorsum of her hand up to the wrist." She "has some evidence of degenerative changes consistent with her age and weight, some mild crepitus and slightly diminished forward flexion." Dr. Bailey found that Plaintiff's obesity "contributes to her symptoms" and that "weight reduction would diminish her complaints." Dr. Bailey found that Plaintiff "appears capable of performing at least a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects." She "would complain of left knee pain with

4

prolonged kneeling" and "would have slight difficulty reaching overhead with the left upper extremity." (Tr. 157-160 and 162-165).

Eli Rubenstein, M.D. read x-rays of Plaintiff's cervical and lumbar spine in April, 2004. Dr. Rubenstein's conclusion was "normal cervical and lumbar spine." (Tr. 161).

A psychiatric evaluation was done in April, 2004 by Roy Shipiro, Ph.D. and J. Rod Coffman, Ph.D., who determined that Plaintiff has a personality disorder. The two doctors found that Plaintiff has a mild restriction of her ability to perform the activities of daily living and moderate difficulty in both maintaining social function and maintaining concentration, persistence or pace. They concluded that Plaintiff "appears capable of occasional interactions with coworkers and the public" and "appears capable of completing 2-3 step tasks in an environment which is not high stress." (Tr. 166-181).

A second psychological evaluation was performed by George Lester, Psy. D. in March, 2004. Dr. Lester diagnosed Plaintiff with Major Depressive Disorder, Cannabis and Cocaine Abuse in remission, a personality disorder with anti-social features and a borderline range IQ. Dr. Lester assigned a current GAF of 55. Dr. Lester rated Plaintiff's ability to relate to others, and to understand, remember and carry out simple instructions as "mildly impaired." Dr. Lester rated as "mildly to moderately impaired" Plaintiff's ability to maintain attention and concentration and to deal with the stresses of the day. (Tr. 182-187).

Plaintiff presented at Spectrum in Blue Ash for physical therapy related to he low back, shoulders and neck. She rated her back pain as 4-5 when sitting and 8-9 when standing or walking. She described her pain as "sharp" and "constant." Plaintiff rated her neck pain as a 2 while on medication and 8-9 when not on medication. She attended physical therapy sessions from November, 2003 to July, 2004. The physical therapy was ordered by doctors at The Christ Hospital Clinic, where Plaintiff was seen in the period from February, 2003 to July, 2004. (Tr. 207-221). A summary provided by a nurse manager indicated that Plaintiff was diagnosed with cervical spine disc disease, osteoarthritis of the neck and back, hypertension and respiratory difficulties secondary to allergies and obesity. Plaintiff needed to have an air-conditioned environment and to have access to a phone to call 911. (Tr. 222).

Daniel Clare, M.D. and Lynn Bennett, M.D. are the Christ Hospital physicians who

5

prescribed a program of aquatic therapy, which Plaintiff pursued for approximately 1 year from November, 2004. She took therapy sessions at the Drake Center and though Spectrum Rehabilitation. (Tr. 226-272).

In November, 2002, Plaintiff was admitted to The Christ Hospital with complaints of chest pain. She was diagnosed with hypertension and obesity, but the chest pain was more likely related to either musculoskeletal or gastroesophageal problems. (Tr. 271-280). In May, 2003, x-rays of the cervical spine showed a "cortical irregularity at C-4 on the left" and "slight arthritic changes," but no evidence of a compression fracture and prevertebral soft tissue was normal. (Tr. 310-311). At C3-4, "there was a moderate sized central right broad-based disc protrusion with mild indentation of the ventral surface of the cervical chord." (Tr. 313).

Plaintiff received counseling/psychotherapy at Norcen Behavioral Systems from January, 2002 to April, 2005. The diagnosis there was major depression and a generalized anxiety disorder. Plaintiff also reported that she had high blood pressure, arthritic pain and was obese. A GAF of 55 was assigned. Norcen indicated that Plaintiff's stressors were financial and family-related. (Tr. 319-346).

Plaintiff was evaluated by Dr. Clare in November, 2005. Dr. Clare stated that Plaintiff's ability to lift and carry was affected by her "low back pain" and "diffuse disc bulge," but he declined to opine on how much she could lift. Dr. Clare also stated that Plaintiff's ability to stand/walk was affected by her "knee and low back pain," but he declined to opine on the extent to which Plaintiff could stand/walk. Dr. Clare's opinion was that Plaintiff's ability to sit was not affected by her impairments. Dr. Clare also indicated that Plaintiff's ability to push/pull was affected by her carpel tunnel syndrome in her right hand and disc protrusion in her neck.

After the ALJ rendered his decision in March, 2006, Plaintiff submitted to the Appeals Council documents prepared by Cynthia A. Lear, Plaintiff's physical therapist at the Drake Center and Dr. Joseph El-Houjairy from the Christ Hospital Clinic. Ms Lear opined that Plaintiff could neither sit nor stand and "currently lacks the capacity to function in a work setting." Ms. Lear indicated that Plaintiff "spends 2/3 of her time in bed" due to generalized pain and obesity. Similarly, Dr. El-Houjairy indicated that he was Plaintiff's primary care physician, that she suffered from morbid obesity, hypertension, diabetes and depression. Dr. El-Houjairy indicated

6

that Plaintiff gets short of breath upon exertion, has an unstable gait and suffers from chronic fatigue. He felt that Plaintiff's pain was severe enough to interfere with her ability to attend and concentrate. He estimated that Plaintiff could sit and stand/walk for less than 2 hours respectively per day. He stated that Plaintiff should never lift and that she would miss work more than twice per month because of her impairments and treatment. Both Ms. Lear and Dr. El-Houjairy felt that Plaintiff's prognosis was "poor." Ms. Lear rendered her opinion in June, 2006 and Dr. El-Houjairy rendered his in August, 2006.

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

When a plaintiff presents evidence to the Appeals Council but not to the ALJ, ("additional evidence") and the Appeals Council considers the additional evidence but declines to review the plaintiff's claim, the District Court may not consider that additional evidence, unless all the requirements of a remand under sentence six of 42 U.S.C. § 405(g) have been met. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In *Cotton*, the Sixth Circuit adopted the Seventh Circuit's rationale in *Eads v. Secretary of H.H.S.*, 983 F.2d 815 (7th Cir. 1993) that when the Appeals Council declines review, it is the decision of the ALJ and therefore the facts which were before the ALJ that are subject to appellate review. *Cotton*, 2 F.3d at 695-96. In a sentence six remand, the Court does not rule on the correctness of the administrative decision. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 174 (6th Cir. 1994), *citing Melkonyan*, 501 U.S. 89.

The Court may remand a case to the Commissioner for consideration of additional evidence only if the party seeking remand demonstrates that 1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing and 2) this evidence is new and material. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163, 2165 (1991); *Willis v. Secretary of H.H.S.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

To show good cause, the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Oliver v. Secretary of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis*, 727 F.2d at 554.

To be "material" within the meaning of § 405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver*, 804 F.2d at 966. New evidence on an issue already fully considered by the Commissioner is cumulative, and is not sufficient to warrant remand. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980); *Thomas v. Schweiker*, 557 F. Supp. 580, 582 (S.D. Ohio 1983) (Spiegel, J.). Evidence that plaintiff's condition has deteriorated since the Commissioner's decision is not material. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966. If plaintiff has experienced serious deterioration since the Commissioner's decision, the appropriate remedy is to file a new application. *Sizemore*, 865 F.2d at 712.

Plaintiff's sole Statement of Error is that the Appeals Council erred in either failing to reverse or remand the case to the ALJ based on the two documents submitted after the ALJ rendered his decision in March, 2006. Although a refusal to review creates some degree of uncertainty as to the rationale employed by the Appeals Council, we shall consider both alternatives, either of which would justify a refusal to review. The first is that Plaintiff failed to demonstrate that her late filing of supporting documentation was supported by good cause. The second is that even if good cause was demonstrated, Plaintiff failed to demonstrate that the late filings would reasonably have changed the original decision the ALJ made.

Plaintiff admits that the documents submitted by the physical therapist and Dr. El-Houjairy were not before the ALJ when he made his decision and simply does not know whether or not the

8

documents were considered by the Appeals Council in denying review. The documents were, however, mailed to the Appeals Council on August 8, 2006 and presumably were before the Appeals Council before January 26, 2007, which was the date the Appeals Council denied review. Plaintiff justifies the late filing by asserting that she is poor, receives medical treatment at a clinic, where the physicians change periodically. Plaintiff further explains that the clinic physicians will not provide a functional capacity evaluation unless the patient is first seen by a physical therapist. Plaintiff says that she was not able to schedule an appointment for evaluation by a physical therapist until after her hearing before the ALJ in November, 2005. Defendant argues that neither good cause for the late filing has been shown, nor is there a reasonable likelihood that the new evidence would result in a more favorable opinion.

In order to obtain a sentence six remand, Plaintiff has the burden to show that remand is appropriate, in other words to show that the new evidence is material and there is good cause for her failure to put this evidence in the record before the decision by the ALJ. 42 U.S.C., § 405(g); *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996); *Sullivan v. Finkelstein*, 496 U.S. 617 (1990). The new evidence consists of residual functional capacity assessments by a physical therapist and a treating physician. Obviously, the two documents are material. While it might have been the better practice to have filed an affidavit indicating when the appointment with the physical therapist was scheduled, how long it took to receive a response from the therapist, and how long it took to receive an opinion from the clinic physician, we are convinced that Plaintiff's economic circumstances justify a conclusion that she was doing her best and that good cause has been satisfied.

However, once good cause is established, Plaintiff must also show that the new evidence would reasonably have made a difference. The new evidence that Plaintiff can neither sit for any length of time, nor lift any amount of weight, is completely contradictory to not only the body of medical evidence in Plaintiff's medical record, but also flies in the face of what Plaintiff testified she is able to do. For example, Plaintiff told the ALJ that she could load the dishwasher, cook on occasion and shop for groceries. She said that she could lift 5-10 lbs. and sit for 30-40 minutes at a time before needing to change positions. Dr. Clare, Plaintiff's treating physician said that her ability to sit was unaffected by her impairments in November, 2005. Dr. Rubenstein read Plaintiff's cervical and lumbar x-rays in April, 2004 and found a normal cervical and lumbar spine. X-rays

9

previously taken at The Christ Hospital in May, 2003 showed a slight irregularity at C3-4, but no evidence of fracture and normal prevertebral soft tissues. Drs. DeMuth and Manos determined that Plaintiff could both sit for 6 hours and stand/walk for 6 hours in a workday. Dr. Bailey opined that Plaintiff "appears capable of performing at least a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects" in April, 2004. Drs. DeMuth and Manos opined that Plaintiff could lift 25 lbs. frequently and 50 lbs. occasionally in May, 2004.

The only portion of the ALJ's opinion we found to be somewhat at odds with Plaintiff's physical condition was his willingness to accept Drs. DeMuth and Manos' conclusion that Plaintiff had the residual functional capacity to occasionally climb ladders, ropes or scaffolds. While we regard this conclusion as somewhat incredulous, considering Plaintiff's current weight of 339 lbs., limited ability to reach overhead, and a somewhat arthritic left knee, these limitations do not affect Plaintiff's ability to perform her past relevant work as a file clerk at the light and semi-skilled level.

We find it unlikely that the ALJ would have rendered a favorable opinion had the new evidence been considered. The new evidence is not only not supported by objective findings, but it is outside the bulk of medical evidence in Plaintiff's medical record. A remand under sentence six would be inappropriate. The Appeals Council made no error.

## CONCLUSION

There being no error in the previous processing of this case, judgment should be entered in favor of the Defendant Commissioner. **IT IS THEREFORE RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

May 9, 2008

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).